WILLIAM YOUNG & CO., PLAINTIFFS IN ERROR, v. COOPER & CO., DEFENDANTS IN ERROR.

Attachment : FRAUD. One C., a member of the firm of C. & Co., went to Chicago and arranged with Y. & Co., to purchase stock for them and draw on them for the necessary advances. C. then returned to this state, drew a draft' on Y. & Co. for $2,000.00, and wrote to them that he had purchased 125 hogs and would have 200 by Saturday night. Upon these representations the draft was paid. C. & Co. then sold the hogs to other parties. *Held*, That an attachment against the property of C. & Co., upon the ground that the debt was fraudulently contracted, would be sustained.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*Field & Holmes,* for plaintiffs in error.

*Courtnay & Caldwell,* for defendants in error.

Maxwell, J.

In August, 1879, the plaintiffs commenced an action against the defendants in the district court of Lancaster county, to recover the sum of $2,246.20, and caused an attachment to be issued and levied upon their property, the grounds for the attachment being that the "defendants fraudulently contracted the said debt, and fraudulently incurred the obligation for which suit has been brought." The attachment was dissolved in the court below on the motion of the defendants and the attached property discharged. The cause of complaint in this court is error in dissolving the attachment.

The affidavit of Albert D. Pickering used on the hearing below shows the following facts: "That he is one of the above named plaintiffs and a member of the firm of Wm. Young & Co., doing a general commission business in the city of Chicago, and state of Illinois; that for a long time, to-wit: from the 27th day of January, 1881, to the 28th day of July, 1881, said plaintiffs were doing a general and continuous business with said defendants, by advancing money for the purpose of enabling said defendants to purchase live stock and ship the same to plaintiffs in the city of Chicago, to be sold upon commission as is agreed and more particularly admitted by said defendants in affidavits filed herein; that there had been a running account between plaintiffs and defendants during said time; that the greater portion of the business as carried on between plaintiffs and defendants as aforesaid was carried on by one Wm. H. Sibley, agent of said plaintiffs, who resided in the city of Lincoln, in the state of Nebraska. That on or about the 17th day of June, 1881, the said defendant, Willard Cooper, called upon the affiant in the city of Chicago, and examined the running account as aforesaid, and then found and agreed with this affiant, that there was a small balance due and owing

from said plaintiffs to these defendants, and affiant further says, that the said Cooper, then at the time aforesaid, told this plaintiff, .that the said agent, Sibley, would not advance to them, the said defendants, sufficient money to enable them to carry on their business as general stock dealers in the county of Lancaster, state of Nebraska, but that they could do a much larger business provided said plaintiffs would advance to them, the said defendants, money in much larger sums, and the said Cooper then informed the said plaintiffs that on account of existing troubles between said defendants and said agent, Sibley, they could not continue their said business unless the said defendants could deal directly and exclusively with said plaintiffs, and said Cooper further informed this affiant that they desired to commence a new account with these plaintiffs, to settle and adjust the balance as due, and to then commence a new account. Relying upon these false and fraudulent representations, this affiant agreed with said defendant Cooper that such arrangments should be made; that said Cooper further informed this affiant at the time and place aforesaid, that he was going home, and that they, the said defendants, would commence the purchase of hogs and other stock, and that all of said stock they would ship to these plaintiffs, and draw drafts: on these plaintiffs for the payment of the same, and it was agreed by and between this plaintiff and said Cooper that upon receipt of a letter accompanying any of said drafts that they, the said defendants, had stock ready or about to be shipped, or had been shipped to these plaintiffs, that plaintiffs would pay said drafts. Affiant further says, that on the 21st day of June, A. D. 1881, the said defendant, Cooper, informed these plaintiffs, that said defendants had purchased a lot of one hundred and twenty-five hogs, and that said defendants would have two hundred hogs at the end of the same week, and that they had drawn upon said plaintiffs a draft for the sum of two

thousand dollars. And affiant says, that relying upon the agreement of said defendants as aforesaid, and upon the representations of said defendants, and believing the same were true, and that said defendants would ship said stock to these plaintiffs, said plaintiffs paid the draft, and advanced the said defendants the sum of two thousand dollars. That said defendants, wholly disregarding the representations and agreements as aforesaid, to and with this affiant, fraudulently, corruptly, and with intent to defraud and cheat the said plaintiffs, did sell and dispose of said stock to other persons than said plaintiffs. That said defendants from that time have not shipped to these plaintiffs any stock whatever, but have refused to deal further with plaintiffs, and have refused plaintiffs' repeated requests for a settlement and adjustment of their said account," etc.

Mr. Pickering is corroborated by the affidavit of W. C. Fulton, his clerk, and also by W. H. Sibley. At the time Cooper & Co. drew the draft in question, they sent to the plaintiffs a letter, of which the following is a copy:

BENNETT, 6—21, 1881.

*Wm. Young & Co. Dear Sir:* Have made draft on you for two thousand dollars. We have one hundred and twenty-five hogs bought, will have two hundred by Saturday. Lots of hogs for sale now. Are paying $4.60–75 for good ones. Yours,

WILLARD COOPER.

Four days thereafter and after the draft in question had been sent, and probably paid, the defendants sent the following letter to the plaintiffs:

BENNETT, 6—25, 1881.

*Wm. Young & Co. Gentlemen:* I have sold the hogs for this week and will have two cars of cattle the 1st day of July, and three cars of hogs. Send me statement of our account. Will see Sibley then immediately and fix our matters all up, and pay balance due you, then when we

ship the stock, take a new start entirely. When we ship
will notify you and will not want to draw any more than
the stock comes to. Want to keep balance in my favor.

Yours truly,

Cooper & Co., per C.

E. A. Kilborn, one of the defendants, filed an affidavit
in the case, in which he states that the entire amount of
the defendants' transactions with Young & Co. amount to
$69,000.00, and that the action is brought for a pretended
balance, and that the defendants are not indebted to
the plaintiffs in any sum whatever.

The defendant, Cooper, filed three affidavits made by
himself. In the first he alleges that the defendants are
solvent, denies that the debt was fraudulently contracted,
and alleges that he had, previous to the commencement
of the action, offered to pay the plaintiffs any balance due
them. In the second he denies that he is indebted to
the plaintiffs in any sum whatever, but alleges that the
"plaintiffs were to aid and furnish this affiant with money
to buy stock; * * * that he is a local stock dealer in
Lancaster county, and as such, in pursuance of the
aforesaid agreement and its further provisions, did ship
to said plaintiffs stock as aforesaid, and that he was, in
pursuance of said agreement, given credit to the amount of
the sales of stock shipped plaintiffs an account for moneys
advanced as aforesaid," etc. It is also stated, there is
a balance due the defendant from the plaintiffs of the
sum of $1,800.00, and he again denies that he has com-
mitted any fraudulent act. In the third he states that
the $2,000.00 paid on the draft in question was received
on the old arrangement, and that the only change made
was to deal directly with the plaintiffs, and not through
W. H. Sibley. He also states that at the date of the
draft in controversy the defendants had purchased and
paid for the hogs mentioned in his letter with their own
money. There is an entire failure however either to deny

or explain the grounds upon which the plaintiffs base their right to an attachment. It does appear however, from the affidavits in the case, that the defendants had transacted their business through W. H. Sibley, an agent of plaintiffs residing at Lincoln, until about the 17th day of June, 1881, but that they were unable to obtain advances from Sibley, unless they had sufficient stock on hand to make the same secure. The defendant, Cooper, then was anxious to make an arrangement with the plaintiffs to ship direct to them without the intervention of an agent, and draw on them for the necessary advances. This arrangement was made on the 17th day of June, and in pursuance of the arrangement made by Cooper with the plaintiffs he returned to this state, and on the 21st of June of that year, drew on them for $2,000.00, and at the same time wrote a letter representing that he had already purchased 125 hogs, and that he would have 200 by Saturday. If we leave out all that portion of the letter as to the number he expected to purchase, as being a mere expression of opinion, still the representation remains as to the 125 which he claimed to have purchased. As to this number he evidently intended that the plaintiffs should understand that they had been purchased for them, and the very object of the letter in question, in view of the previous arrangement, was to assure them that the purchase was made for them. This representation was made as to existing facts, and for the purpose of inducing the plaintiffs to pay his draft, which, relying upon his representations, they afterwards did. In his third affidavit filed in this case Cooper states in effect that he did not purchase the hogs in question for the plaintiffs, thus by his own evidence showing that the representations made by him to the plaintiffs were false. That the fraud thus practised was material there is no doubt, because without the representations as to the number of hogs purchased the draft would not have been paid. In the examination

of the record in this case we have no doubt that there was a deliberate purpose on the part of Cooper to commit a fraud upon the plaintiffs, and that the visit to Chicago, and the arrangement to deal directly with them without the intervention of Sibley, was but part of the scheme which was consummated by drawing the draft in question, and.making the false representations complained of.

" Where a party intentionally or by design misrepresents a.material fact, or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case there is positive fraud in the truest sense of the terms. There is an evil act with an evil intent, *dolum malum ad circumveniendum*. And the misrepresentations may be as well by deeds or acts, as by words; by artifices to mislead, as well as by positive assertions." Story Eq., sec. 192.

The judgment of the district court is reversed, the attachment reinstated, and the cause remanded for further proceedings.

REVERSED AND REMANDED.